IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| ADLIFE MARKETING & COMMUNICATIONS COMPANY, INC., a Rhode Island corporation, | ) ) ) | |
| | ) | Case No. 17-cv-01418 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| MULTI-AD SOLUTIONS, LLC, a Delaware limited liability company; YELLOW PAGES INTEGRATED MEDIA ASSOCIATION, a Delaware corporation; KRASDALE FOODS, INC., a Delaware corporation; ALPHA ONE MARKETING GROUP INC., a Delaware corporation; and DOES 1-100, inclusive, | ) ) ) ) ) ) ) ) ) | Judge: Michael M. Mihm Magistrate: Jonathan E. Hawley |
| Defendants. | ) ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT MULTI-AD SOLUTIONS, LLC'S COMBINED FRCP 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND FRCP 12(E) MOTION FOR A MORE DEFINITE STATEMENT

NOW COMES Defendant, MULTI-AD SOLUTIONS, LLC, ("Multi-Ad" or "Multi-Ad Solutions, LLC"), by and through its undersigned counsel of Hinshaw & Culbertson LLP, and in support of its above-referenced combined and alternative motions, submits this Memorandum of Law:

## I.     The Complaint Fails to State a Cause of Action Against Multi-Ad Solutions, LLC

### A.     The Breach of Contract Allegations

Plaintiff Adlife Marketing, Inc., ("Adlife"), states that Multi-Ad is a Delaware limited liability company with its principal place of business in Peoria, Illinois. (ECF #1, p.3, ¶5). Adlife describes Multi-Ad as a marketing and advertising agency that also licenses photographs to its clients. (Id., p.4, ¶15). Adlife references a 1994 Agreement that it entered into with a different entity, Multi-Ad Services, Inc. as the agreement under which it provided Multi-Ad Solutions, LLC with certain non-exclusive rights to distribute copyrighted food photos through

licensing agreements with Multi-Ad Solutions, LLC clients. (Id., pp. 4, ¶15, p. 6, ¶23, p. 15, ¶66 & ECF #1-1). Even though the Agreement shows it was entered into by Adlife and Multi-Ad Services, Inc., and not Multi-Ad Solutions, LLC, Adlife asserts that the 1994 Agreement required Multi-Ad Solutions, LLC to purchase four digital photos a month on an "individual basis" from Adlife. Though the Agreement has no price for such photos, Adlife asserts that undated correspondence from a vice-president at Multi-Ad allegedly indicates a mutual agreement to a price of $100 per photograph. Adlife also asserts that a late charge of 1.5% per month for unpaid royalty balances beyond a 30 day period is owed by Multi-Ad. (ECF #1, p. 6, ¶¶24-25 & ECF #1-1 at p.4, 2.2).

Adlife claims that Multi-Ad failed to make any payments, "during the entire contract period," under the four images a month provision, including any related late payment charges, (ECF #1, p. 7, ¶¶28-30, p.15, ¶70), and thereby asserts that Multi-Ad breached the Agreement. (Id., ¶71). Adlife also alleges that Multi-Ad owes unspecified royalty sums related to Multi-Ad's distribution of other images received from Adlife. (ECF #1, p. 7, ¶27, p. 8, ¶32, p.16, ¶73). Adlife does not plead that Multi-Ad Solutions, LLC breached any provisions of the 2011 First Amendment that Adlife entered into with Multi-Ad Services, Inc., (not Multi-Ad Solutions, LLC). (ECF #1, p. 7, ¶27, p. 15, ¶69, ECF #1-2). Finally, Adlife does not plead that Multi-Ad was a successor to Multi-Ad Services, Inc., or provide any facts for its legal conclusion that Yellow Pages Integrated Media Association is the alter ego or successor corporation to Multi-Ad. (ECF #1, p. 16, ¶75).

## B.    The Unjust Enrichment Allegations

Adlife adopts all of its breach of contract allegations for its unjust enrichment claim against Multi-Ad, including that it had a contractual relationship with Multi-Ad. (ECF #1, p. 16, ¶76). The benefit that Adlife proclaims Multi-Ad withheld includes Adlife's performance of

2

generalized contractual "obligations" under the Agreement, and unspecified "economic benefits" that Adlife believes Multi-Ad procured "for itself and others," (ECF #1, p. 16, ¶77), all based on an alleged "material" breach of the Agreement by Multi-Ad, (Id., ¶79), and an unspecified act of "Multi-Ad's improper licensing of Adlife's Copyrighted Food Photographs." (Id., ¶80). All of the benefit allegations by Adlife revolve around alleged contractual relationships between Adlife and Multi-Ad. But once again, Adlife does not plead that Multi-Ad was a successor to Multi-Ad Services, Inc., or provide any facts to support its pled legal conclusions that Multi-Ad was a party to the Adlife Agreement with Multi-Ad Services, Inc., or that Yellow Pages Integrated Media Association is the alter ego or successor corporation of Multi-Ad. (ECF #1, p. 17, ¶86). Finally, Adlife does not detail any of its images that are allegedly possessed, held, or under the control of Multi-Ad at the time Adlife filed its Complaint.

### C.    The Standards for FRCP 12(b)(6) Motions

The Complaint must contain enough specific facts, that if accepted by the Court as well-pled and true, state claims that are plausible on their face. *Bell Atl. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Airborne Beepers & Video, Inc. v. AT&T Mobility, LLC,* 499 F.3d 663, 668 (7th Cir. 2007)("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). *Palda v. General Dynamics Corp.,* 47 F.3d 872, 875 (7th Cir. 1995)("A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."). Adlife opted for filing suit in the U.S. District Court in the Central District of Illinois against Multi-Ad. But Adlife did not contract with Multi-Ad according to the contract documents attached as exhibits attached to Adlife's Complaint. (ECF ##1-1 & 1-2). Moreover, Adlife does not explain why it has not named Multi-Ad Services, Inc., the entity with which it contracted, as a defendant. Rather, Adlife pleads that it contracted with

3

Multi-Ad Solutions, LLC, a different entity. Therefore, to the extent that the Court reads all or part of Adlife's claims against Multi-Ad as relying on an alleged breach of a written contract, and to the extent any pled material breach by Multi-Ad occurred more than ten years before Adlife filed suit, the breach of contract claim is untimely. Alternatively, if Adlife's pleading is read as asserting that Multi-Ad allegedly breached a governing oral contract more than five years before suit was filed, the beach of an oral contract claim is also untimely. Furthermore, to the extent that Adlife proclaims that Multi-Ad was unjustly enriched more than five years pre-suit, than the Court may dismiss the unjust enrichment claim pled in Count III as untimely, all under FRCP 12(b)(6). *O'Gorman v. City of Chicago,* 777 F.3d 885, 888-89 (7th Cir. 2015); *Cancer Foundation, Inc. v. Cerberus Capital Management, LP,* 559 F.3d 671, 674-75 (7th Cir. 2009). For a statute of limitations dismissal, the complained of defects must be apparent on the face of the complaint, including whether it "appears from the face of the complaint itself that the limitation period has run," and thereby supports a dismissal of the breach of contract and unjust enrichment claims pled against Multi-Ad pursuant to FRCP 12(b)(6). *Varner v. Peterson Farms,* 371 F.3d 1011, 1016 (8th Cir. 2004).

Adlife's diversity jurisdiction filing in Illinois against Multi-Ad compels finding that Illinois law governs the claims pled against Multi-Ad. *A.T.N., Inc. v. McAirlaid's Vliesstoffe GMBH & Co.,* 557 F.3d 483, 485 (7th Cir. 2009). This choice of law determination is also consistent with the Agreement Adlife attaches to its Complaint, which states that the Agreement "shall be governed by and construed in accordance" with Massachusetts and Illinois laws. (ECF #1-1, pp. 12-13, Section 8.3 Jurisdiction and Venue).

### D.    The Insufficiency of the Breach of Contract Claim Pled in Count II

In Count II, Adlife must plead sufficient facts that show the existence of a contract between Adlife and Multi-Ad, meaning that an offer, acceptance, and exchange of consideration

4

occurred between Adlife and Multi-Ad that had to do with Adlife's copyrighted photos and their alleged distribution by Multi-Ad.  But the contract documents Adlife attaches to the Complaint show that no such written agreement existed between Adlife and Multi-Ad.  Instead, the referenced contract documents identify Adlife and Multi-Ad Services, Inc. as the contracting parties.  Adlife has not named Multi-Ad Services, Inc. as a defendant party.  Moreover, there are no pled facts indicating that Multi-Ad requested or received any photos from Adlife, or that Multi-Ad distributed any photos purportedly received from Adlife, much less in a manner not provided for by the Agreement between Adlife and Multi-Ad Services, Inc.  Such deficient pleading alone supports dismissing the breach of contract claim against Multi-Ad.

The appropriate remedy for addressing an obvious discrepancy in identity between the documented contracting party and the alleged contracting party is a dismissal under FRCP 12(b)(6).  *See Roe v. Jewish Children's Bureau of Chicago*, 339 Ill.App.3d 119, 126, 790 N.E.2d 882, 889 (1st Dist. 2003), *appeal denied*, 205 Ill.2d 645 (2003)("For example, plaintiffs do not identify in their brief who made an offer or the manner in which it was accepted.  We have examined the portions of plaintiffs' complaint cited in their brief and find no support for plaintiffs' assertions regarding the existence of a contract.")("We find similar deficiencies in the paragraphs of the complaint that plaintiffs cite as allegations of acceptance and consideration."); *On Tap Premium Quality Waters, Inc. v. Bank of Northern Illinois, N.A.*, 262 Ill.App.3d 254, 260, 634 N.E.2d 425, 430 (2nd Dist. 1994)("Accordingly, because plaintiff's second amended complaint failed to allege sufficient facts to support the existence of a contract, the trial court did not err in concluding that Count I failed to state a cause of action for breach of contract."); *Nuccio v. Chicago Commodities, Inc.*, 257 Ill.App.3d 437, 444, 628 N.E.2d 1134, 1139 (1st Dist. 1994)("The third amended counterclaim alleges Nuccio breached an oral contract with CCI

5

which relied upon the customs and practices of the industry for provision of most terms.  CCI argues that in the present case, issues such as offer and acceptance are simply immaterial and that the allegation that there was a contract between the parties adequately implies that there was an offer and acceptance.")("Since the third amended counterclaim is devoid of the necessary factual allegations, the trial court acted properly in granting Nuccio's motion to dismiss."); *Disc Jockey Referral Network, Ltd. v. Ameritech Publishing of Illinois,* 230 Ill.App.3d 908, 913, 596 N.E.2d 4, 8 (1st Dist. 1992), *appeal denied,* 146 Ill.2d 625 (1992)("Instead, plaintiff alleged generally that a contract existed.  A bare allegation that a contract existed, however, is but a legal conclusion which may not be admitted as true by a motion to strike or dismiss.  (cite omitted). Therefore, merely to allege that a party 'contracted' with another, as plaintiff has done here, does not suffice.").  The cited authorities support finding that the breach of contract action pled in Count II against Multi-Ad fails to state a cause of action recognized at law.

Another defect of the breach of contract claim involves its untimeliness.  Adlife claims that it was never paid by Multi-Ad for any of the four monthly photos during the entire term of a contract that was executed on June 8, 1994.  (ECF #1, p. 7, ¶¶28-30, p. 15, ¶70 & ECF #1-1, p.1).  If Adlife actually had a written contract with Multi-Ad, any claim based on such a contract would have to be brought within 10 years of a claimed breach under Illinois law.  735 ILCS 5/13-206.  But Adlife lacks a written agreement with Multi-Ad, and the alleged letter agreement Adlife states it had with Multi-Ad for the price of the four monthly photos, (ECF#1, p. 6, ¶24), only qualifies for the 5 year statute of limitations provided by 735 ILCS 5/13-205.  *Hassebrock v. Ceja Corp.,* 2015 IL App (5th) 140037, ¶31-32, 29 N.E.3d 412, 420-21 (5th Dist. 2015), *appeal denied,* 39 N.E.3d 1002 (2015).   If the Agreement and Complaint are read to indicate that Adlife had a verbal contract with Multi-Ad, any related breach of an oral contract action would have to

6

be filed within five years of an alleged breach.  735 ILCS 5/13-205.  Under either scenario, Adlife complains of complete non-performance by Multi-Ad on paying for the alleged monthly allotment of four photos which started upon the execution of the Agreement on June 8, 1994. There are no facts pled that can sustain the portion of the breach of contract claim filed against Multi-Ad twenty-three years later based on its alleged complete non-performance of the four photos per month provision, "during the entire contract period," as Adlife pleads.  (ECF #1, p. 7, ¶28, p. 15, ¶70).  *See Hassebrock,* 2015 IL App (5th) 140037 at ¶36, 29 N.E.3d at 422 ("Thus, even if we were to construe the venture agreement as constituting a continuous-performance contracts as the plaintiff suggests, the statute of limitations began to run when the total breach occurred.").

The allegations by Adlife with respect to alter ego or an alleged successor corporation are also deficient as a matter of law.  There are no allegations that Multi-Ad purchased or merged with Multi-Ad Services, Inc., or that Multi-Ad Services, Inc. transferred its assets to Multi-Ad. There are no allegations that Multi-Ad assumed liabilities of Multi-Ad Services, Inc., or that Multi-Ad is a mere continuation of Multi-Ad Services, Inc. due to reorganization.  Likewise, there are no similar allegations connecting Multi-Ad to Yellow Pages Integrated Media Association.  In the absence of any such factual allegations regarding Multi-Ad Services, Inc., Multi-Ad, or Yellow Pages Integrated Media Association, Adlife fails to establish either its undeclared or presumed claim of successor liability involving the party with which it contracted, Multi-Ad Services, Inc., and Multi-Ad.  The additional absence of any allegations that the contracting party, Multi-Ad Services, Inc., or the named defendant Multi-Ad, failed to follow corporate formalities similarly compels dismissing any claim against Multi-Ad premised on an alleged alter ego relationship with either Multi-Ad Services, Inc. or Yellow Pages Integrated

7

Media Association.  The noted factual vacuum is further compounded by the absence of any allegations of fraudulent misrepresentation.  Within this context of a claim for breach of contract, piercing the corporate veil is particularly disfavored.  *Main Bank of Chicago v. Baker,* 86 Ill.2d 188, 205-06, 427 N.E.2d 94, 101-02 (1981); *Saletech, LLC v. E. Balt, Inc.,* 2014 IL App 132639, ¶29, 20 N.E.3d 796, 806-07 (1st Dist. 2014)(affirming dismissal of alter ego claim to pierce corporate veil due to absence of required factual allegations).

In addition, and in the alternative with respect Plaintiff's allegations in Count II about a nonexistent written contract with Multi-Ad, and to the extent such allegations may be read as alleging an unspecified oral agreement between Adlife and Multi-Ad, the bar found in the Statute of Frauds applies.  To the extent that Adlife bases its breach of contract claims against Multi-Ad based on an oral agreement formed back in 1994 and thereafter, all in the absence of a writing, Adlife's breach of contract claim runs aground on the shoals of the Statute of Frauds as unenforceable.  740 ILCS 80/1 ("No such action shall be brought … upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized."); *see also McInerney v. Charter Golf, Inc.*, 176 Ill.2d 482, 489-93, 680 N.E.2d 1347, 1351-53 (1997) (holding that Statute of Frauds barred action based on oral contract for employment that exceeded one year post-formation); *Peck v. McCormick Harvesting Mach. Co.*, 196 Ill. 295, 297-98, 63 N.E. 731 (1902)(holding that verbal contract for person to serve as exclusive sales agent within particular territory for five years was rendered unenforceable by the Statute of Frauds).  In the absence of a written agreement with between Adlife and Multi-Ad, the

8

Court may also find that Adlife asserts a breach of an oral contract that is directly barred by the Illinois Statute of Frauds and its one-year limitation on performance contained in its provisions.

### E.    The Insufficiency of the Unjust Enrichment Claim Pled in Count III

Adlife adopts all of the breach of contract allegations from Count II when it pleads an unjust enrichment action in Count III, thereby undermining its unjust enrichment claim as a matter of law.  The result of Adlife incorporating the allegations about an existing contract between Adlife and Multi-Ad renders the unjust enrichment claim subject to a dismissal. *ICD Publications, Inc. v. Gittlitz,* 2014 IL App (1st) 133277 at ¶83, 24 N.E.3d 898, 921 (1st Dist. 2014), *appeal denied,* 32 N.E.3d 674 (2015)("Moreover, we note that, as Gittlitz premised his unjust enrichment claim on a purported verbal contract among the ICD shareholders, the theory of unjust enrichment would be inapplicable.");  *Gagnon v. Schickel*, 2012 IL App (1st) 120645 at ¶25, 983 N.E.2d 1044, 1052 (1st Dist. 2012)("This theory is inapplicable where an express contract, oral or written, governs the parties' relationship."); *Guin v. Hoskins Chevrolet*, 361 Ill.App.3d 575, 604, 836 N.E.2d 681, 704 (1st Dist. 2005), *appeal denied,* 218 Ill.2d 538 (2006)("Although a contract is not specifically referenced in Deborah's unjust enrichment count, she incorporates the allegations of each other count into the unjust enrichment count.")("Accordingly, dismissal of this count is appropriate under the principles set forth above."); *Barry Mogul & Associates, Inc. v. Terrestris Development Co.*, 267 Ill.App.3d 742, 750, 643 N.E.2d 245, 251 (2nd Dist. 1994), *appeal denied,* 159 Ill.2d 563 (1995)("It is well established, as a general rule, that a plaintiff cannot pursue a quasi-contractual claim where there is an express enforceable contract between the parties.")(affirming dismissal of quantum meruit claim).  By expressly incorporating its allegations regarding an alleged written contract with Multi-Ad, even though the attached exhibits identify someone other than Multi-Ad as the

9

contracting party, Adlife presents a fatally flawed claim of unjust enrichment against Multi-Ad that is subject to dismissal under FRCP 12(b)(6).

Additional points of law support dismissing the unjust enrichment claim in Count III. The contractual documents Adlife attaches as exhibits to the Complaint, (ECF ##1-1, 1-2), show the lack of any basis for the quasi-contractual claim of unjust enrichment pled against Multi-Ad. The contractual exhibits overwhelm Adlife's claim that it could reasonably expect Multi-Ad to pay for photographs Adlife supplied to Multi-Ad Services, Inc., and not Multi-Ad. Adlife also fails to indicate how Multi-Ad accepted or retained any benefit in light of Adlife's allegation that Multi-Ad cancelled a license previously held by Defendant Krasdale and Alpha One. (ECF #1, pp. 9-10, ¶41). Further, Adlife expressly states that "Alpha One did not provide royalties or payment to Multi-Ad for this impermissible use…" Id. p. 17, ¶84. Thus Adlife's pleading shows that there was no benefit received by Multi-Ad. The net effect of Adlife's incorporation of contractual allegations, and lack of benefit allegations not overruled by the Complaint's contractual exhibits and Adlife's contrary allegations, support dismissing the unjust enrichment claim against Multi-Ad in Count III. *See Gagnon v. Schickel*, 2012 IL App (1st) 120645 at ¶¶22, 26, 983 N.E.2d at 1051-52 (affirming dismissal of unjust enrichment action where letter exhibit attached to complaint contradicted essential elements of unjust enrichment action).

## II.    Alternative Motion for More Definite Statement under FRCP 12(e)

If the Court denies Multi-Ad's motion to dismiss made under FRCP 12(b)(6), Multi-Ad alternatively requests that the Court require Adlife to file an amended complaint containing a more definite statement of its claims against Multi-Ad pursuant to FRCP 12(e). Adlife creates many contradictions in the wake of its overly conclusive allegations that fail to inform Multi-Ad when it supposedly breached a written agreement with Adlife, or breached an oral agreement with Adlife, or withheld a benefit from Adlife in a supposedly inequitable manner. Adlife also

10

has yet to spell out any facts or documents that supposedly relate to its unpled conclusion about a relationship between the entity with which Adlife contracted, Multi-Ad Services, Inc., and the entity Adlife sued, Multi-Ad.  In similar fashion, Adlife also does not disclose any facts to support its pled conclusion about Multi-Ad having a corporate successor or alter ego that Adlife proclaims is Yellow Pages Integrated Media Association.  As another example, Adlife defines "Defendants" as all named defendants, ECF #1, p. 1.   In Count I, alleging copyright infringement, it is stated in the heading to be against only defendants Alpha One and Krasdale, ECF #1, p. 12.  Yet each paragraph of Count I refers to "Defendants," which includes Multi-Ad. See ECF #1, ¶¶56-64.  Thus, in Count I of the Complaint, Adlife fails to identify specifically who are the parties it refers to as the "Defendants" who supposedly took any actions related to Adlife's copyright infringement claim.  Is Adlife accusing Multi-Ad of copyright infringement – after alleging that Multi-Ad had a license from Adlife to use the alleged copyrighted materials? Multi-Ad should not have to guess which Defendant party Plaintiff may be referring to when it uses the term "Defendants," especially when Adlife labels its copyright infringement claim in Count I as involving parties other than Multi-Ad.

Such conclusory methods of pleading have generated ambiguities and contradictions that prejudice the ability of Multi-Ad to know whether it would answer with respect to itself or others, especially if the Court requires Multi-Ad to file an answer in response to Adlife's claims of breach of contract and unjust enrichment.  Multi-Ad's concerns about prejudice are not theoretical, especially when the contract documents Adlife attaches to its Complaint identify a party other than Multi-Ad as the contracting party.  In sum, if the Court denies the FRCP 12(b)(6) motion to dismiss filed by Multi-Ad, the cited deficiencies in the Complaint create a pleading that is "so vague or ambiguous that the opposing party cannot respond, even with a

simple denial, in good faith or without prejudice to [itself]."  5A Charles A. Wright and Arthur R. Miller, Federal Practice & Procedure, Civil 2d, sec. 1376 (1990); *see also Lopez v. Ortiz*, 11 F.Supp.3d 46, 49 (D. P.R. 2014)(discussing the absence from the complaint of allegations that clarify capacity of parties sued as defendants).

III.   **Severance**

A.    **If the Court Grants Defendants Krasdale's and Alpha One's Motion to Transfer, Multi-Ad Requests That The Court Sever the Proceedings and Retain Jurisdiction for the Pending Claims against Multi-Ad**

Defendants Krasdale and Alpha One have moved to dismiss the claims against them for lack of personal jurisdiction, and in the alternative, to transfer the case to the Southern District of New York.  (ECF ##18, 19).  If the Court grants that motion, Multi-Ad respectfully requests that the Court sever the proceedings and transfer only the Krasdale and Alpha One portion of the case to that jurisdiction.    Adlife's claims against Multi-Ad have no relationship to that venue. Adlife's claims against Multi-Ad have no relationship to the claims made against Krasdale and Alpha One.    Nothing in the complaint suggests that Multi-Ad has any relationship with the Southern District of New York.    In fact, Adlife's claims against Krasdale and Alpha One have nothing to do with the claims against Multi-Ad; they do not arise out of any common set of facts or case or controversy.

IV.   **Conclusion**

Multi-Ad asks the Court to dismiss the breach of contract and unjust enrichment actions pled against Multi-Ad under FRCP 12(b)(6).  In the alternative, if the Court denies Multi-Ad's FRCP 12(b)(6) motion, then Multi-Ad asks the Court to order Plaintiff to file a more definite statement of its claim  in an amended complaint pursuant to FRCP 12(e).  Finally, if the Court grants Defendants Krasdale's and Alpha One's motion to transfer, Multi-Ad requests that the Court sever the proceedings and retain jurisdiction over the pending claims against Multi-Ad.

300645487v2 1002813

WHEREFORE, Defendant MULTI-AD SOLUTIONS, LLC requests that the Court grant it the relief sought in its combined and alternative motion to dismiss under FRCP 12(b)(6), or, in the alternative, grant it the requested relief for a more definite statement by Plaintiff ADLIFE MARKETING & COMMUNICATIONS COMPANY, INC., in an Amended Complaint, pursuant to FRCP 12(e).

Respectfully submitted,

/s/ Ambrose V. McCall
Mark K. Suri, ARDC 6199636
msuri@hinshawlaw.com
Hinshaw & Culbertson LLP
222 North LaSalle Street
Suite 300
Chicago, IL 60601-1081
Telephone: 312-704-3000
Facsimile: 312-704-3001

Ambrose V. McCall, ARDC 6196898
amccall@hinshawlaw.com
416 Main Street, 6th Floor
Peoria, IL 61602
Telephone: 309-674-1025
Facsimile: 309-674-9328

Attorneys for Defendant Multi-Ad Solutions, LLC

13

## CERTIFICATE OF SERVICE

I hereby certify that on **November 9, 2017**, I electronically filed this **MEMORANDUM IN SUPPORT OF DEFENDANT MULTIU-AD SOLUTIONS, LLC'S COMBINED FRCP 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND FRCP 12(E) MOTION FOR A MORE DEFINITE STATEMENT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Mathew K. Higbee, Esq.
HIGBEE & ASSOCIATES
1504 Brookhollow Dr., Suite 112
Santa Ana, CA  92705
(*Attorneys for Plaintiff*)

Donald M. Craven
CRAVEN LAW OFFICE
1005 N. Seventh St.
Springfield, IL  62702
*Attorneys for Defendants Krasdale Foods, Inc. and Alpha One Marketing Group, Inc.*

Jeffrey G. Sorenson
HOWARD & HOWARD ATTORNEYS PLLC
One Technology Plaza
211 Fulton St., Suite 600
Peoria, IL  61602-1350
*Attorneys for Defendant Yellow Pages Integrated Media Association*

Kenneth P. Norwick
NORWICK & SCHAD
110 East 59th Street
New York, NY  10022
*Attorneys for Defendants Krasdale Foods, Inc. and Alpha 1 Marketing Services, Inc.*

_/s/ Ambrose V. McCall_
Attorney for Defendant Multi-Ad Solutions, LLC
Ambrose V. McCall
HINSHAW & CULBERTSON LLP
416 Main Street, 6th Floor
Peoria, IL  61602