**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| ADLIFE MARKETING & COMMUNICATIONS COMPANY, INC., a Rhode Island corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>MULTI-AD SOLUTIONS, LLC, a Delaware limited liability company; YELLOW PAGES INTEGRATED MEDIA ASSOCIATION; a Delaware Corporation; MULTI-AD SERVICES, INC., a Illinois Corporation; MA STOCK ACQUISITION, LLC, a Delaware limited liability company; SOUTHERN GRAPHIC SYSTEMS, LLC, a Kentucky limited liability company; SOUTHERN GRAPHICS INC., a Delaware Corporation; MA BUILDER, LLC, a Delaware limited liability company; MA ADBUILDER, LLC, a Delaware limited liability company; METRO CREATIVE GRAPHICS, INC., a New York Corporation; MA ASSET ACQUISITION, LLC, a Delaware limited liability company; MA HOLDING, LLC, a Delaware limited liability company; and DOES 1-100, inclusive,<br><br>    Defendants. | Case No. 1:17-CV-01418-MMM-JEH<br><br>Judge: Michael M. Mihm<br><br>**DEMAND FOR JURY TRIAL**<br><br>**EQUITABLE RELIEF IS SOUGHT** |

**FIRST AMENDED COMPLAINT**
**FOR BREACH OF CONTRACT AND UNJUST ENRICHMENT**

Plaintiff, Adlife Marketing & Communications Company, Inc. ("Adlife" or "Plaintiff"), complains against Defendants Multi-Ad Services, Inc. ("Multi-Ad Services"); MA Stock Acquisition, LLC ("MA Stock"); Southern Graphic Systems, LLC ("SGS LLC"); Southern Graphics Inc. ("SG Inc."); MA Builder, LLC ("MA Builder"); MA AdBuilder, LLC ("MA AdBuilder"); MA Asset Acquisition, LLC ("MA Asset"); Multi-Ad Solutions, LLC ("Multi-Ad"); MA Holding, LLC ("MA Holding"); Yellow Pages Integrated Media Association d/b/a

Local Search Association ("LSA"); Metro Creative Graphics, Inc. ("Metro Creative"); and DOES 1- 100 (collectively "Defendants") as follows:

1.    This is a civil action seeking damages against Defendants for breach of contract and unjust enrichment.

2.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction) because plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interests and costs.

3.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) in that the claim arises in this Judicial District, Defendants may be found and transact business in this Judicial District, or were formerly found and formerly transacted business in this Judicial District and Multi-Ad Services entered into a contract with Adlife and at least one third-party that forms the subject matter of this dispute in this Judicial District. Additionally, relevant agreements between Adlife and Multi-Ad Services, from which all Defendants benefit or previously benefitted, provide for jurisdiction and acceptance of the propriety of venue in this Judicial District. Defendants are subject to the general and specific personal jurisdiction of this Court because of their contacts with the State of Illinois, including the entry of contracts with jurisdiction and venue clauses in this Judicial District.

## **THE PARTIES**

4.    Plaintiff Adlife Marketing, Inc. is a Rhode Island corporation with its principal place of business in Pawtucket, Rhode Island.

5.    On information and belief, Defendant Multi-Ad Services, Inc. is or was a corporation existing under the laws of Illinois, with its principal place of business in Peoria, Illinois.

6. On information and belief, Defendant Multi-Ad Services, Inc. merged with MA Stock Acquisition, LLC, a limited liability company existing under the laws of Delaware, with its principal place of business in Peoria, Illinois, with MA Stock Acquisition, LLC surviving.

7. On information and belief, Defendant MA Stock Acquisition, LLC merged with Southern Graphic Systems, LLC, a limited liability company existing under the laws of Kentucky with its principal place of business in Louisville, Kentucky, with Southern Graphic Systems, LLC surviving.

8. On information and belief, Defendant Southern Graphics Inc. d/b/a sgsco, a Delaware corporation with its principal place of business in Louisville, Kentucky, owns or otherwise controls Southern Graphic Systems, LLC.

9. On information and belief, Defendant MA Builder, LLC was a Delaware limited liability company with its principal place of business in Peoria, Illinois.

10. On information and belief, Defendant MA Builder, LLC changed its name to MA AdBuilder, LLC, a Delaware limited liability company with its principal place of business in Peoria, Illinois.

11. On information and belief, Defendant Yellow Pages Integrated Media Association d/b/a Local Search Association is a Delaware corporation, with its principal place of business in Troy, Michigan. On information and belief, LSA allegedly only acquired MA AdBuilder, LLC's assets.

12. On information and belief, Defendant Metro Creative Graphics, Inc., a New York corporation with its principal place of business in New York, New York acquired LSA.

13. On information and belief, Defendant MA Asset Acquisition, LLC is a Delaware limited liability company with its principal place of business in Peoria, Illinois.

14. On information and belief, Defendant MA Asset Acquisition, LLC changed its name to Multi-Ad Solutions, LLC, a Delaware limited liability company with its principal place of business in Peoria, Illinois.

15. On information and belief, MA Holding, LLC is a Delaware limited liability company with its principal place of business in Peoria, Illinois.

16. Defendants, excluding Southern Graphic Systems, LLC, Southern Graphics Inc., and Yellow Pages Integrated Media Association d/b/a Local Search Association and Metro Creative Graphics, Inc., shall be collectively referred to as the "Multi-Ad Defendants."

17. On information and belief, there is or was, at all relevant times, such a unity of interest and ownership between Defendants that any individuality and separateness between them ceased to exist, and that such are the alter egos of each other, face successor liability, or such that it would otherwise be appropriate to pierce the corporate veil. On information and belief, the assets and management of the Defendants were intermingled, at least as evidenced by public filings that show Shelby Vaughn as the Chief Financial Officer for Defendants and show Vaughn as the signatory for Defendants on both sides of intellectual property assignment agreements. On information and belief, the Multi-Ad Defendants shared the same principal place of business and each of the Multi-Ad Defendants and Defendants used the assets of the other Multi-Ad Defendants and Defendants freely. On information and belief, corporate formalities were not maintained, such that Defendats were structured so as to evade liability and, by their actions, and Defendants abused the corporate form such that adherence to the fiction of separate corporate entities would promote injustice.

18. On information and belief, (1) before any of the transactions involved in the case there was an express or implied agreement of assumption; (2) the transactions amounted to a

consolidation or merger of the purchaser or seller business; (3) the purchaser was merely a continuation of the seller; and/or (4) the transactions were for the fraudulent purpose of escaping liability for the seller's obligations.

19. The true names or capacities, whether individual, corporate or otherwise, of the Defendants named herein as DOES 1 through 100, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will ask leave of Court to amend this Complaint and insert the true names and capacities of said Defendants when the same have been ascertained.

## STATEMENT OF FACTS

*Adlife and the Photographs Forming the Subject Matter of This Complaint*

20. Adlife is an advertising and marketing agency whose team of seasoned professionals has, for decades, provided elite branding services to its clientele. With its innovative marketing campaigns and its production of high quality printed pieces such as retail circulars, signage, pamphlets and more, Adlife enables its client to build a brand through compelling visual arrangements.

21. Since 1978, Adlife has created, artistically arranged and professionally produced a library of still images of food and other grocery items. Adlife's library now consists of approximately 30,000 photos. The photographs are high-resolution, artistically rendered with pleasing angles and selective lighting, color-corrected and color-separated, which makes them particularly valuable as, when used together, they provide color consistency.

22. For valuable consideration, Adlife has licensed the rights to reproduce, distribute and publicly display its copyrighted photographs, or derivative versions thereof, to other advertising agencies and retailers.

23.     Adlife is the holder of all rights, title and interests in and to said food photographs (the "Copyrighted Food Photographs"), which are detailed further in the original Complaint in this action and incorporated herein by reference.

24.     The Copyrighted Food Photographs at issue in this Complaint were timely registered with the United States Copyright Office.

*Defendants and their Improper, Coordinated Activities*

25.     On information and belief, despite the distinct corporate names and forms, Defendants are alter egos, successors of each other, or piercing the corporate veil would otherwise be appropriate. On information and belief, each of the entities has improper connections to Multi-Ad Services[1] and the conduct and agreements that gave rise to this dispute. On information and belief, the assets and ownership interests—including interests in the Agreement and subsequent Amendment—have moved to multiple, related or shell entities in a manner such that the imposition of liability on all Defendants would be proper.

26.     Multi-Ad Services is a marketing and advertising agency that helps companies manage and distribute e-commerce and marketing content. As part of its services, Multi-Ad Services makes photographs it licenses available to its clients. Pursuant to an agreement, Adlife once provided Multi-Ad Services with a non-exclusive right based on a subscription fee arrangement to distribute, *inter alia*, the Copyrighted Food Photographs to potential Multi-Ad Services clients under appropriate licensing terms.

27.     On information and belief, Multi-Ad Services is a sophisticated user and owner of intellectual property. Indeed, the agreement at issue and Multi-Ad Services business structure

---

[1] The terms Multi-Ad Services as used in this First Amended Complaint is not mean to exclude any of the Defendants. On the contrary, Defendants—including the Multi-Ad Defendants—are the alter egos or successor entities of each other or piercing the corporate veil is otherwise appropriate.

6

evidences that Multi-Ad Services (or its alter ego, successor entity, or entity for which piercing the corporate veil would otherwise be appropriate) is aware of the value of original photographs, and the rights therein, including copyrights. Multi-Ad Services' Terms and Conditions on its website <https://www.multiad.com/terms.shtml> include a section titled "Restrictions on Use of Materials" that demonstrates Multi-Ad Services values its "copyright and other proprietary rights."

28.    Despite a recorded merger between Multi-Ad Services, Inc. to MA Stock Acquisition, LLC (the latter surviving) and a subsequent merger between MA Stock Acquisition, LLC to Southern Graphic Systems, LLC (the latter surviving), the www.multiad.com website states "Copyright and Legal Notices © 2018 Multi-Ad Services, Inc. All Rights Reserved."

29.    On information and belief, at all relevant times, each of the Multi-Ad Defendants acted in concert to promote Multi-Ad Services' business, including the generation of revenue through the improper licensing of Adlife's content, including to such third parties as Alpha 1 Marketing Corp. ("Alpha 1"), among others.

30.    According to its website, Southern Graphics Inc. is a collective of companies and people that work together to deliver end-to-end marketing solutions from concept through implementation, with an emphasis on product packaging.

31.    LSA is a subscription service with over 1.3 million photographs, illustrations, templates, editorial content, and more. LSA offers content from its library to subscribers to download for print, digital advertising or for numerous other purposes.

32.    LSA is a sophisticated user and owner of intellectual property. Apart from providing subscription services for over a million items, LSA owns numerous federally registered trademarks. On its website, LSA claims or has claimed that "[a]ll content . . . is either

owned by LSA or licensed from 3rd parties. Your use of these images is subject to any restrictions or conditions of the copyright owner."

33. Metro Creative is a provider of advertising, creative and editorial resources that provides according to its website, *inter alia*, "images, spec ads, stock-quality photos, logos/trademarks . . . [and] copyright-free editorial features."

*Multi-Ad Services' Breach of its Agreement with Adlife*

34. On or around June 8, 1994, Adlife partnered with Multi-Ad Services to make Adlife's photographs available for licensing to clients and, to that end, entered into a Digital Food Photography Distributor Agreement with Multi-Ad Services ("The Agreement"). Through this agreement, Adlife granted Multi-Ad Services the non-exclusive right to distribute Adlife's photographs to Multi-Ad Services' clients under particular terms. A true and correct copy of the Agreement is attached as Exhibit A.

35. Section 2.2 of the the Agreement stated, in relevant part, that Multi-Ad Services would provide Adlife with royalty payments of licenses granted under the agreement. Paragraph 2.2 also required Multi-Ad Services to purchase from Adlife "on an individual basis, (4) digital photos each month, at a mutually agreed price, for placement in Distributor's Ad-Builder product for purposes of promoting Developer's products." Subsequent correspondence from Brian Dickerson, the Vice-President of Product Development at Multi-Ad Services, indicates that the parties mutually agreed on a price of $100.00 per photograph.

36. Section 2.2 of the Agreement further provided that "A late payment charge of one and one-half percent (1.5%) per month shall be charged shall be paid upon unpaid balances due after said thirty (30) day period."

37. Section 3.3 of the Agreement notes that "all applicable copyrights . . . and other intellectual property rights in the digital phots and all other items licensed hereunder are and shall remain in [Adlife]." The section also makes abundantly clear that "no title to, or ownership of, the digital photos or any part thereof, is hereby transferred to [Multi-Ad]."

38. On or around September 13, 2011, the parties, via a written addendum, modified the Agreement (the "Amendment"). The Amendment changed Section 2.2 Terms of Payment of the Agreement to, *inter alia*, include an additional source of royalties for Adlife. The amendment also modified the definition of Net Sales under the agreement to expand the meaning of the term. A true and correct copy of the Amendment is attached as Exhibit B.

39. Despite continuing to distribute the Adlife photographs to its clients, Multi-Ad Services failed to provide Adlife with timely or appropriate payments under the Agreement. Indeed, among other things, an accounting provided by LSA, Multi-Ad Services' successor to the Agreement, to Adlife shows that, during the entire contract period, Multi-Ad Services failed to make any payments for the required four images per month and related late payments.

40. Therefore, Multi-Ad Services materially breached the binding Agreement by, *inter alia*, failing to make the monthly payments for the four photographs and related late payments, as required under Section 2.2 (Terms of Payment of the Agreement).

41. Accounting statements from Multi-Ad Services that accompanied payments to Adlife did not specify what items were covered in the payments. Mutli-Ad Services refused Adlife's multiple requests for a more detailed accounting. Upon further questioning by Adlife's legal counsel in April of 2017, general counsel for Multi-Ad Services' successor to the Agreement, LSA (later acquired by Metro Creative), admitted that Multi-Ad Services had never made a single monthly payment for the four images.

42. Adlife performed or substantially performed all its obligations under the Agreement, as amended, including making the Copyrighted Food Photographs available to Multi-Ad Services. To the extent Adlife failed to perform any obligations under the Agreement, Multi-Ad Services' breach excused such obligations.

43. As a direct and proximate cause of Multi-Ad Services' breach of the Agreement, as amended, Adlife has been damaged in an amount to be proved a trial, including without limitation, for unpaid royalties, the sum of the mutually agreed price per image and related late payments, and attorneys' fees.

44. Section 8.6 of the Agreement provides that "In any action between the parties to enforce any of the terms of this Agreement, the prevailing party shall be entitled to recover expenses, including reasonable attorneys' fees."

45. On information and belief, after comprehensive transactions, Metro Cereative (as the entity that, on information and belief acquired LSA) and Southern Graphics Inc. (as the entity that, on information and belief, owns and controls Southern Graphic Systems, LLC.) now enjoy the benefits of the contract entered into between Multi-Ad Services and Adlife.  Further, on information and belief, Metro Creative and Southern Graphics are the alter egos of Multi-Ad Services or liability as successors or otherwise piercing the corporate veil would be proper under the circumstances.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

### (Against all Defendants)

46. Adlife incorporates here by reference the allegations in the preceding paragraphs as if fully set forth herein.

47. On or around June 8, 1994, Adlife partnered with the Multi-Ad Defendants to make Adlife's photographs available to clients and entered into a valid and binding Agreement. Through this Agreement, Adlife granted Multi-Ad Services (and, as a consequence of Defendants' allegations, each of the Multi-Ad Defendants based on, among other possible bases, alter ego) the non-exclusive right to distribute Adlife's photographs to Multi-Ad Services' clients.

48. Section 2.2 of the Agreement required Multi-Ad Services to pay royalties, purchase of photographs from Adlife to place on Defendants' Ad-builder product, and Payment under express terms, with possible charges for late payments.

49. Section 3.3 of the Agreement, *inter alia*, preserved Adlife's rights in the copyrighted content.

50. On or around September 13, 2011, the parties, via a written addendum, modified the Agreement.

51. An accounting from Multi-Ad Services, provided through its successor and alter ego, LSA (later acquired by Metro Creative), demonstrated that, during the entire contract period, Multi-Ad Services (and as such the Multi-Ad Defendants) failed to make any payments for the required four images per month and related late payments.

52. Therefore, Multi-Ad materially breached the binding Agreement by, *inter alia*, failing to make the monthly payments for the four photographs and related late payments, as required under Section 2.2 (Terms of Payment of the Agreement).

53. Adlife performed or substantially performed all its obligations under the Agreement, as amended, including making the Copyrighted Food Photographs available to Multi-Ad Services (and by extension each of its alter egos). To the extent Adlife failed to

11

perform any obligations under the Agreement, Multi-Ad Services' breach excused such obligations.

54. As a direct and proximate cause of Multi-Ad Services' breach of the Agreement, as amended, Adlife has been damaged in an amount to be proved a trial, including without limitation, for unpaid royalties, the sum of the mutually agreed price per image and related late payments, and attorneys' fees.

55. Section 8.6 of the Agreement provides that "In any action between the parties to enforce any of the terms of this Agreement, the prevailing party shall be entitled to recover expenses, including reasonable attorneys' fees."

56. On information and belief, after comprehensive transactions, Metro Cereative (as the entity that, on information and belief acquired LSA) and Southern Graphics Inc. (as the entity that, on information and belief, owns and controls Southern Graphic Systems, LLC.) now enjoy the benefits of the contract entered into between Multi-Ad Services and Adlife. Further, on information and belief, Metro Creative and Southern Graphics are the alter egos of Multi-Ad Services or liability as successors or otherwise piercing the corporate veil would be proper under the circumstances.

## SECOND CLAIM FOR RELIEF

### Unjust Enrichment

### (Against all Defendants)

57. Adlife incorporates here by reference the allegations in paragraphs 1-42 as if fully set forth herein.

58. Adlife brings this claim as an alternative to its breach of contract claim. Even if there is no enforceable contractual obligation on the part of Defendants, Adlife is entitled to recover money from Defendants under the doctrine of unjust enrichment.

59. Adlife conferred benefits upon Defendants by satisfying its obligations under the Agreement, which allowed Multi-Ad Services, despite materially breaching the contract, to procure economic benefits for itself and others.

60. Adlife reasonably expected that it would receive the royalties, payments, and late payments under Paragraph 2.2 of the Agreement.

61. Multi-Ad Services did not provide the agreed-upon royalties, payments, and late payments to Adlife. Rather, Multi-Ad Services materially breached the Agreement and, nonetheless, issued a license to third-party Alpha 1 Marketing, among potentially others.

62. It would be unjust and Defendants would be unjustly enriched if Defendants were permitted to retain revenue derived from Multi-Ad Services' improper licensing of Adlife's Copyrighted Food Photographs.

63. Adlife, to its detriment as, inter alia, it lost the ability to control distribution of its copyrighted content, conferred benefits upon Multi-Ad Services by satisfying its obligations under theAgreement, which allowed Multi-Ad Services, despite materially breaching the contract, to license Adlife's Copyrighted Food Photographs.

64. Alpha 1 Marketing impermissibly exceeded the scope of the license from Multi-Ad Services and, instead of limiting the use of Adlife's Copyrighted Food Photographs to a single person or entity or seeking an enterprise license from Adlife, Alpha 1 Marketing licensed such photographs to hundreds of grocery stores.

65. Adlife reasonably expected that it would receive royalties or payments, at least as a third-party beneficiary of the license between Multi-Ad Services and Alpha 1 Marketing, as Adlife owns the underlying Copyrighted Food Photographs from which Defendants benefitted with increased revenues and higher demand.

66. Defendants did not provide royalties or other payments to compensate for Alpha 1 Marketing's improper use of the Copyrighted Food Photographs that exceeded the scope of such license. On information and belief, Alpha 1 Marketing did not provide royalties or payments to Multi-Ad Services for this impermissible use, thereby depriving Adlife of downstream income from Multi-Ad Services for this widespread and unauthorized use of its Copyrighted Food Photographs. To the extent Alpha 1 Marketing compensated Multi-Ad Services, Adlife would be entitled to a portion of such income in the form of, at least, royalty payments.

67. It would be unjust and Defendants would be unjustly enriched if they were permitted to retain revenue derived from Multi-Ad Services' improper licensing of Adlife's Copyrighted Food Photographs including, without limitation, use flowing form Alpha 1 Marketing's impermissible use.

68. Retention of the benefits flowing from Defendants' conduct would violate fundamental principles of justice, equity, and good conscience.

69. On information and belief, after comprehensive transactions, Metro Cereative (as the entity that, on information and belief acquired LSA) and Southern Graphics Inc. (as the entity that, on information and belief, owns and controls Southern Graphic Systems, LLC.) now enjoy the benefits of the contract entered into between Multi-Ad Services and Adlife. Further, on information and belief, Metro Creative and Southern Graphics are the alter egos of Multi-Ad

Services or liability as successors or otherwise piercing the corporate veil would be proper under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

70. The Defendants, and their officers, agents, servants, employees, and representatives, and all persons in active concert or participation with them, be permanently enjoined from copying, reproducing, displaying, promoting, advertising, distributing, or selling, or any other form of dealing or transaction in, any and all Copyrighted Food Photographs of Adlife(as detailed in the original Complaint in this action and incorporated herein by reference);

71. Actual and consequential damages from Defendants' breach of the Agreement;

72. An accounting be made for all profits, income, receipts or other benefit derived by Defendants from the unlawful licensing or sale of products and services, or other media, either now known or hereafter devised, that improperly or unlawfully include Copyrighted Food Photographs of Adlife (as detailed in the original Complaint in this action and incorporated herein by reference);

73. Reasonable attorneys' fees incurred herein pursuant to the terms of the Agreement or otherwise available by law;

74. Costs and interest otherwise available by law;

75. The Court declare that Defendants must return to Plaintiff all economic benefits rightfully belonging to Plaintiff;

76. Awarding prejudgment interest to Plaintiff on all amounts owed; and

///

///

77. Plaintiff be awarded any such other and further relief as the Court may deem just and appropriate.

Dated: January 30, 2018                                        Respectfully submitted,

*/s/ Oscar M. Orozco-Botello*
John Tehranian
jtehranian@onellp.com
Oscar M. Orozco-Botello
oobotello@onellp.com
ONE LLP
4000 MacArthur Blvd.,
East Tower, Suite 500
Newport Beach, CA 92660
(949) 502-2870
(949) 258-5081 facsimile

*/s/ Naomi M. Sarega*
Mathew K. Higbee
mhigbee@higbeeassociates.com
Naomi M. Sarega
nsarega@higbeeassociates.com
HIGBEE & ASSOCIATES
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705
(714) 617-8349
(714) 597-6559 facsimile

*Attorneys for Plaintiff Adlife Marketing & Communications Company, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2018, I electronically filed the foregoing **FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Kenneth P. Norwick
Email: ken@norwickschad.com
Norwich & Schad
110 East 59th Street
New York, NY 10022

Donald M. Craven
Email: dmcraven@aol.com
Craven Law Office
1005 N. Seventh St.
Springfield, IL 62702

*Attorneys for Defendants Krasdale Foods, Inc. and Alpha 1 Marketing Corp.*

Mathew K. Higbee
Email: mhigbee@higbeeassociates.com
Naomi M. Sarega
Email: wreyes@higbeeassociates.com
Law Firm of Higbee & Associates
1504 Brookhollow Dr., Suite 112
Santa Ana, CA 92705

John Tehranian
Email: jtehranian@onellp.com
One LLP
4000 MacArthur Blvd.
East Tower, Suite 500
Newport Beach, CA 92660

*Co-Counsel for Plaintiff Adlife Marketing & Communications Company*

Ambrose V. McCall
Email: amccall@hinshawlaw.com
Hinshaw & Culbertson, LLP
416 Main Street, Suite 600
Peoria, IL 61602

Mark K. Suri
Email: msuri@hinshawlaw.com
Hinshaw & Culbertson, LLP
222 N. LaSalle St., Suite 300
Chicago, IL 60601-1081

*Attorneys for Defendant Multi-Ad Solutions, LLC*

Jeffrey G. Sorenson
Email: jhs@h2law.com
Howard & Howard Attorneys PLLC
One Technology Plaza
211 Fulton St., Suite 600
Peoria, IL 61602-1350

*Attorney for Defendant Yellow Pages Integrated Media Association*

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on January 30, 2018 at Beverly Hills, California.

                                               */s/ Oscar M. Orozco-Botello*
                                               Oscar M. Orozco-Botello